ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

FEB 1 2 2010

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

PHUC QUANG LE,                          )
                                        )
        Petitioner,                     )
                                        )
v.                                      )        CASE NO.
                                        )
                                        )   1:10-CV-0408
S. HUBERT HUMPHREY, JR.; and            )
WORLD MARKETING ALLIANCE INC.,          )              -WCO
                                        )
        Respondents.                    )

## VERIFIED PETITION TO CONFIRM ARBITRATION AWARD

Petitioner Phuc Quang Le ("Petitioner" or "Le") files this verified petition

against Respondents, S. Hubert Humphrey, Jr. and World Marketing Alliance, Inc.

(collectively referred to as "Respondents") for the purpose of confirming and making

the judgment of this Court that certain American Arbitration Association ("AAA")

award dated February 8, 2010 (the "Arbitration Award"), a true and correct copy of

which is attached hereto as **Exhibit A**.

## I.    Introduction

1.

This petition is filed pursuant to the Federal Arbitration Act codified at 9

U.S.C. §§ 1-13 (the "FAA") and/or the New York Convention on the Recognition and

Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517 as codified, as amended, at 9 U.S.C. §§ 201-208 (1995) (the "New York Convention") following arbitration proceedings conducted by the AAA in its Atlanta office (the "Arbitration") which resulted in the issuance or entry of the Arbitration Award by an arbitrator duly appointed by and pursuant to the rules of the AAA.

2.

The commercial agreements underlying the Arbitration Award involved interstate commerce and expressly provided for application of the Federal Arbitration Act in relation to these proceedings.

3.

Petitioner seeks the entry of an order confirming the Arbitration Award and a judgment in conformity therewith.

## II.   Parties, Jurisdiction, and Venue

4.

S. Hubert Humphrey, Jr. ("Humphrey") participated in the Arbitration and is subject to the jurisdiction and venue of this Court and may be served with a copy of this petition by personal service upon him at his residence located at 2015 Trammel Road, Cumming, Forsyth County, Georgia 30041.

5.

World Marketing Alliance, Inc., a Georgia corporation ("WMA") has its

principal office at P.O. Box 160, Duluth GA 30096 and also participated in the Arbitration. WMA is subject to the jurisdiction and venue of this Court and may be served with a Summons and a copy of this Petition by serving its registered agent, James F. Tenney, at 200 Galleria Parkway, Suite 500, Atlanta, Fulton County, Georgia 30339.

6.

The operative provisions of the parties' agreement contemplate that an award by an arbitrator (after confirmation proceedings, like these, have been completed) shall be final and binding and that a judgment on the award rendered by the Arbitrator may be entered in any court having jurisdiction thereof. Consequently, this Court has jurisdiction over these proceedings under 9 U.S.C. § 9 or  9 U.S.C. §203 and 28 U.S.C. §1331.

7.

Venue is proper in this Court and in this district pursuant to the agreements of the parties and 9 U.S.C. § 9, 9 U.S.C. § 204, and 28 U.S.C. § 1391(b).

## III. The Arbitration Proceedings & Award

8.

Petitioner had a contractual relationship with WMA which, at all relevant times, was owned or controlled by Humphrey.

9.

Disputes arose between Petitioner and Respondents.  On May 3, 2006, Petitioner filed a demand for arbitration with the AAA thereby commencing arbitration proceedings before that body.

10.

In accordance with AAA procedures and rules, Diane Durgin, a Georgia attorney, was duly appointed and served as the sole arbitrator.

11.

The Arbitration was authorized and conducted pursuant to Section VIII(A)(2) in an agreement between the parties[1] providing that "any controversy, claim or dispute arising out of or relating to this Agreement, between [Petitioner], on the one part, and [WMA] and/or any of the Corporate People, or any of them, on the other part (a "Grievance") shall be resolved exclusively by Good Faith Arbitration in accordance with this Section VIII."

12.

A true and correct copy of the parties' signed agreement containing the operative arbitration provisions is attached hereto as **Exhibit B** (the "Agreement").

---

[1] In the Award, the Arbitrator stated that "[t]here are two versions of an Associates Agreement that are potentially controlling in this arbitration. . . . The language of the arbitration clause for each Associates Agreement is essentially identical." Award, p. 2, ¶2.

13.

Furthermore, as provided by the Agreement, "[a]ll Grievances, unresolved in the normal course of business, to the extent that any Party wishes to pursue the matter further, shall be resolved by Good Faith Arbitration in accordance with the Commercial Arbitration Rules then obtaining ('Rules') of the American Arbitration Association." See Agreement, Exhibit A, Section VIII(D).

14.

The Agreement also provides that "[t]he Parties expressly authorize the Arbitrator(s) to fashion and award any type of remedy that could be awarded by a court, including such equitable or extraordinary remedies as temporary and permanent relief." See Agreement, Exhibit A, Section VIII(D).

15.

The Agreement purported to provide Petitioner the right to participate in the "International Expansion Program" and to expand internationally. See Agreement, Exhibit A, Section IV(A)(3).

16.

As part of his performance under and pursuant to the terms of the Agreement, Petitioner had, directly or indirectly, recruited agents who were included in his downline operations who sold insurance and other financial products in Canada and other countries on which sales Petitioner earned override commissions.

17.

Beginning on September 21, 2009 and reconvening during the period from October 19, 2009 through November 6, 2009, the parties and/or their counsel appeared for proceedings on the merits which were conducted in Atlanta, Georgia before an arbitrator in accordance with and as provided by Article VIII of the Agreement.

18.

After consulting with counsel for the parties, the arbitrator announced instructions with respect to the deadlines for additional evidentiary and closing argument submissions which, as later amended, were memorialized in the written documents attached hereto as composite **Exhibit C**.

19.

According to the documents comprising Exhibit C and as agreed by the parties, January 12, 2010 was the date the parties' submissions were deemed complete and the Arbitration record was closed.

20.

The Arbitration Award was duly and timely rendered and delivered to the parties on February 8, 2010.

21.

The Arbitration Award is valid and fully enforceable in accordance with its terms.

22.

The claims asserted and determined in the Arbitration included Petitioner's claims that the Respondents had engaged in fraudulent transfers in order to evade their contractual or tort liabilities.  In her Award, the Arbitrator determined that such claims were beyond the scope of the arbitration clause and, thus, were not arbitrable in these proceedings.

23.

During the Arbitration proceedings, however, both Respondents claimed to be insolvent and Humphrey admitted to: (A) engaging experts to provide asset protection advice; and (B) owning and/or conveying assets to family members, outside the State of Georgia, and outside the United States of America.

24.

According to the testimony and the findings in the Arbitration Award, in June 2001 certain assets of WMA were sold to World Financial Group, Inc. (an affiliate of Aegon) ("WFG/Aegon") in exchange for $120 million in cash and other consideration valued or stated to be in excess of $40 million.

25.

Following the sale of its assets to WFG, and with full knowledge of Petitioner's claims against it, Humphrey caused WMA to distribute $84 million in cash to his family members and other insider shareholders.

26.

Humphrey and WMA claimed that the distribution of $84 million in cash did not leave WMA insolvent because, even after that distribution, WMA's balance sheet included as an asset a $28 million accounts receivable from Humphrey. Upon information and belief, Humphrey has never repaid the $28 million he owes to WMA yet he has testified under oath that WMA is insolvent.

27.

Upon information and belief based on the testimony given by witnesses during or in relation to the Arbitration proceedings which include, among other things, admissions by Respondents that they have transferred tens of millions of dollars to family members or other persons or entities without receiving, in exchange, any value or any equivalent value, Respondents will intentionally and maliciously refuse in bad faith to comply with the Arbitration Award.

28.

To date, Respondents have not complied with the Arbitration Award and have failed to pay the sum awarded to Petitioner. Moreover, in response to Petitioners'

inquiries, Respondents have refused to provide any assurances that the Arbitration

Award will be paid.

29.

Regarding post-award proceedings, the Agreement provides in Section

VIII(B)(2):

> The award, including such findings and conclusions may be reviewed,
> vacated, modified or corrected upon application or petition of any Party
> brought within thirty (30) days after the date of the award, by a court of
> competent jurisdiction, provided that in addition to the grounds stated
> in the United States Arbitration Code, 9 U.S.C. § 1, and following, or in
> any other applicable law or statute, the court may also vacate, modify or
> correct the award if the conclusions of law are contrary to law, or if the
> findings of fact are not supported by the facts (as determined by whether
> there was any pertinent and material evidence to support the findings).
> Otherwise, or in compliance with the court's review, the decision of the
> Arbitrator(s) shall be final and binding. Judgment upon the award
> rendered by the Arbitrator(s), or judgment upon the award as reviewed
> by the court, may be entered in any court having jurisdiction thereof.

30.

This provision contains what is referred to as "an enhanced standard of

review." In *Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 28 S. Ct. 1396,

1404-1406 (2008) the United States Supreme Court resolved a split among the circuit

courts and established that parties cannot contractually agree to an enhanced standard

of review under the FAA. "Any other reading opens the door to the full-bore legal

and evidentiary appeals that can render informal arbitration merely a prelude to a

more cumbersome and time-consuming judicial review process." Id. (quotations and

citations omitted). Thus, the enhanced standards of review in the Agreement are unenforceable.

31.

Respondents had a full and fair opportunity to present evidence and argument in the Arbitration proceedings, the merits of which were heard over the course of nearly three full weeks of hearings that took place over a nearly six week long period.

32.

Respondents have not sought to vacate, modify, or challenge the Arbitration Award.

33.

Respondents neither collectively nor separately have any good faith basis upon which they could move to vacate, set aside, modify, or otherwise render the Arbitration Award invalid or ineffectual.

34.

Petitioner is entitled to the immediate entry of an order and judgment confirmation of the Arbitration Award and the entry of judgment in conformity with the award pursuant to § § 9 & 13 of the FAA and/or § 207 of the New York Convention.

## IV. Conclusion and Prayers for Relief

WHEREFORE, Petitioner seeks expedited consideration of this Petition and (i) the entry of an order granting Petitioner immediate injunctive and other equitable relief to prevent WMA and others acting in concert with it from dissipating its assets or removing them from this jurisdiction for the purpose of depriving Petitioner of the benefit of collecting the Arbitration Award; (ii) the entry of an order confirming the Arbitration Award, (iii) the entry of an order granting Petitioner his attorney's fees and costs in bringing this action; (iv) the entry of a judgment in favor of Petitioner and against World Marketing Alliance, Inc. for the sum of $1,176,394.00 with post-judgment interest to the full extent allowed by law  from and after the date of the Arbitration Award, and (v) the entry of an order providing Petitioner with such other and further relief as is just and proper.

This 11th day of February, 2010.

FRANK X. MOORE & ASSOCIATES

Francis X. Moore
Georgia Bar No. 519120

Attorneys for Phuc Quang Le

1847 Peeler Road, Suite D
Atlanta, Georgia 30338
(404) 849-6176
fmoore@fxm-law.com