IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

PHUC QUANG LE,                          :
                                        :
        Petitioner,                     :
                                        :
v.                                      :        CIVIL ACTION
                                        :        NO. 1:10-CV-00408-WCO
S. HUBERT HUMPHREY, JR., and            :
WORLD MARKETING ALLIANCE,               :
INC.,                                   :
                                        :
        Respondents.                    :

## ORDER

The captioned case is before the court for consideration of petitioner's motion to compel against respondent World Marketing Alliance, Inc. [23], respondents' motion for relief from order [25], petitioner's motion for writ of garnishment [29], and respondents' motion for leave to amend brief in reply to petitioner's response in opposition to motion for relief from order [30].

### I.    Factual Background

Respondent World Marketing Alliance, Inc. ("WMA") "operated as an insurance agency and as a marketing company that managed a sales force of independent contractors who sold the products of client companies with whom WMA maintained contractual relationships." (Pet. to Confirm Arbitration Award Ex. A at 1.) WMA was, at all relevant times, owned or controlled by respondent S. Hubert

Humphrey, Jr. ("Humphrey").  (*Id.* at 3; Resp. to Pet. to Confirm Arbitration Award 4.)

Petitioner Phuc Quang Le worked as an independent contractor selling insurance products for WMA pursuant to a written contract (the "Agreement").  (Pet. to Confirm Arbitration Award Ex. A at 2.)  Petitioner signed the Agreement with WMA in or about January 1992 when WMA was known as Alexander, Inc.

According to the Agreement, petitioner's "sole compensation was commissions earned from the sale of insurance and other financial products WMA marketed on behalf of client companies."  (*Id.*)  The compensation structure was as follows:

> The client companies were referred to as "Preferred Companies" or "Preferred Product Providers."  The Preferred Product Providers paid WMA a commission for each of their insurance products sold in an amount determined by the value of the product ("Commissions").  The major portion of commissions paid to agents was received in the first year through an "advance" commission payment which was then earned over the first year of the policy if it remained in force. [Petitioner] was paid a percentage of these first-year commissions according to his agent level on the date of sale.  The insurance products subsequently required customers to make periodic payments to the Preferred Product Providers in order to remain in force.  The payments made by customers in the second year and thereafter generated a small renewal commission which was then paid out through the commission system.  These periodic renewal commissions were also known as "Trailing Commissions."  WMA's business model encouraged its independent contractors to recruit others who would also work as independent contractors selling insurance products for WMA's Preferred Product Providers and be paid commissions.  In furtherance of this model, WMA established a multi-level marketing structure in which independent contractors would receive a small percentage of the commissions generated from insurance

products sold by the contractors they recruited.  This percentage was
known as "Override Commissions."  The persons recruited by the
independent contractor were referred to as the contractors "Downline."

(*Id.* at 3.)

In June 2000, WMA terminated its association with petitioner.[1]  Petitioner

claimed, among other things, that the termination constituted a breach of contract, and

he sought arbitration pursuant to the terms of the Agreement.  On February 8, 2010,

nearly ten years after WMA terminated its association with petitioner, petitioner

obtained an award for approximately $1.2 million (the "Award") following

proceedings before the American Arbitration Association ("AAA") that were

governed by the Federal Arbitration Act.  The Award was not paid.[2]

On February 12, 2010, petitioner filed his verified petition against WMA and

Humphrey seeking confirmation of the Award and invoked federal jurisdiction under

the New York Convention (the "Convention").  In their unverified pleading filed on

March 3, 2010, in partial opposition to petitioner's petition for confirmation,

respondents: (1) admitted this court's jurisdiction; (2) did not present any evidence

---

[1]  Though petitioner voluntarily resigned in May 1995, he returned in February 1996 and resumed his relationship with WMA pursuant to the terms of the Agreement.

[2]  Petition alleged:  "To date, Respondents have not complied with the Arbitration Award and have failed to pay the sum awarded to Petitioner.  Moreover, in response to Petitioner's inquiries, Respondents have refused to provide any assurances that the Arbitration Award will be paid."  (Pet. ¶ 29.)

3

rebutting petitioner's jurisdictional allegations that the Award arose out of commercial relationships falling under the Convention; and (3) invoked and relied on this court's jurisdiction to seek a modification of the Award.

At a status conference held on April 1, 2010, the court inquired whether the parties needed a hearing, and counsel for respondents reported that the "matter is ripe for consideration, and that . . . the matter has been significantly briefed and there is no need for a hearing." (Minute Text of Status Conference on April 1, 2010.) This court accepted jurisdiction to consider the parties' cross confirmation/modification requests and on November 5, 2010, issued an order and judgment granting the former and denying the latter. Respondents took no appeal. In response to repeated demands for payment of the Award, respondents claim that WMA has no money to pay the Award.

On March 2, 2011, petitioner served post-judgment discovery on WMA's counsel, William McLean, who waited more than 30 days before claiming that he was no longer counsel for WMA.[3] On April 22, 2011, petitioner served post-judgment discovery on WMA's registered agent, James Tenney. WMA did not respond. On June 16, 2011, petitioner filed a motion to compel post-judgment discovery responses.

---

[3] Having filed the Rule 60 Motion, McLean apparently has been rehired by WMA. Petitioner also points out that, until recently, McLean's law firm was known as Merritt & Tenney. James Tenney was a named partner in that firm, has long been counsel for respondents, and has served for some time as WMA's registered agent. McLean's law firm has changed its name to Merritt & Watson after Tenney left.

On June 30, 2011, rather than responding to the merits of petitioner's motion to compel, respondents filed a motion for relief from order pursuant to Federal Rule of Civil Procedure 60(b)(4) ("Rule 60 Motion") claiming that this court's order and judgments confirming the Award and denying respondents' motion for modification were void for lack of jurisdiction.  On July 12, 2011, petitioner filed his response to the Rule 60 Motion.  In their reply filed on July 26, 2011, respondents cited but did not attach an Affidavit of Michael Anderson.

On August 9, 2011, respondents filed their motion for leave to amend their reply brief in support of their Rule 60 Motion, in which respondents seek this court's permission to file the Affidavit of Michael Anderson.  On August 15, 2011, petitioner filed his response to respondents' motion for leave to amend.

## II.  Legal Analysis

### A.  Rule 60 Motion for Relief from Order.

Almost 16 months after they invoked this court's jurisdiction, respondents now seek to re-litigate petitioner's reliance on the following provision of the Convention as his basis for federal jurisdiction:

> An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention.  An agreement or

5

award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states.  For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States.

9 U.S.C. § 202.

Petitioner does not dispute that all named parties here are citizens of the United States.  Petitioner asserts that this case falls under the Convention because the Award arose out of a commercial relationship which: (a) envisaged or contemplated performance abroad; (b) involved the formation of relationships by which actual business was conducted abroad; (c) involved property located abroad; and (d) had some other reasonable relation with one or more foreign states.  Specifically, petitioner's verified petition stated, among other things, the following:

As part of his performance under and pursuant to the terms of the Agreement, Petitioner had, directly or indirectly, recruited agents who were included in his downline operations who sold insurance and other financial products in Canada and other countries on which sales Petitioner earned override commissions.

(Pet. ¶ 16.)

In their response to the petition, respondents did not deny these allegations, admitted jurisdiction, and invoked that same jurisdiction in cross-moving for the modification of the Award.  In their Rule 60 Motion, however, respondents now

dispute the allegations contained in ¶ 16 of the petition.  Respondents argue that:  (a) "Petitioner's claims to any foreign connection through Canada or the Philippines are not supported by the facts;" (b) "[t]here was nothing international about Petitioner's association with WMA;" and (c) "Petitioner's relationship with WMA . . . was domestic in nature and did not involve a significant foreign component."  (Resp't's Reply to Rule 60 Motion 11, 12.)

Petitioner did not present specific evidence establishing the applicability of the Convention because respondents did not dispute the jurisdiction asserted in the petition.  In response to respondents' Rule 60 Motion disputing jurisdiction, however, petitioner has proffered specific facts to establish the applicability of the Convention. More specifically, petitioner states under oath that, as part of their global marketing efforts, Humphrey traveled with petitioner for recruiting and other promotional business purposes to England, Canada, Germany, Nevis (West Indies), Hong Kong, Taiwan, Mexico, the Bahamas, the Cayman Islands, and Jamaica.  (Decl. of Pet'r ¶ 25.)  By the time he was terminated from WMA, petitioner had, with the support, personal involvement, and knowledge of Humphrey, successfully recruited agents who lived or sold insurance or financial products on behalf of WMA in Canada, Taiwan, the Philippines, Guam, and Jamaica.  (*Id.* at ¶¶ 3-15.)  While petitioner does not deny that he is a citizen of the United States, he remains a citizen of Vietnam

where he was born.  (*Id.* at ¶ 2.)  Many of petitioner's upline and downline agents at WMA are also natives or citizens of foreign countries.  (*Id.* at ¶ 34.)  In one of his many promotional brochures, Humphrey described WMA as the "United Nations of Marketing."  (*Id.* at ¶ 17, Ex. B.)

According to the terms of his Marketing Director Agreement with WMA, petitioner was required to "assist [these downline agents] with and monitor their training, local meetings, recruiting and compliance with all licensing rules and procedures" and, in exchange, petitioner was entitled to "receive override commissions on the sales of the Products and Services by [his] downline hierarchy." (*Id.* at ¶ 18.)  Thus, petitioner's past and future compensation was dependent on the size and activity of his entire downline, including agents and sales made in other countries including Canada, Taiwan, the Philippines, Guam, and Jamaica.  (*Id.* at ¶¶ 20-24.)

In opposition, to support their argument that "[p]etitioner's claims to any foreign connection through Canada or the Philippines are not supported by the facts," respondents belatedly sought to submit an affidavit of Michael Anderson.  Anderson worked as "the Chief Information Officer (CIO) for . . . WMA" from January 1996 to May 2001.  (Aff. of Anderson ¶ 2.)  "In that role, [Anderson] was required to implement systems that stored and tracked Associate applications, licenses, and the

payment of commissions." (*Id.*)  Anderson states that he had "personal knowledge . . . [that] Associates had to enter into agreements with WMA of Canada, Inc. or WMA Philippines, Inc. in order to sell insurance products or to receive override commissions in those countries." (*Id.* at ¶¶ 4-5.)  Anderson further states that "[t]here are no records that [petitioner] ever entered into any agreement with WMA of Canada, or with WMA Philippines." (*Id.* at ¶ 6.)

Petitioner points out that Anderson was a computer programmer[4] and is not competent to be a fact witness as to the legal effect, construction and interpretation of contracts or agreements that he does not even allege he has seen.  In addition, petitioner states under oath that he was not required to have a separate contract with any Canadian or Filipino company in order to get paid for those agents who lived or sold insurance or financial products on behalf of WMA in Canada or the Philippines. (Decl. of Pet'r ¶ 24.)   In fact, prior to his termination, petitioner "received commissions from and credit for the business activities of the portion of [his] downline agents who were citizens or residents, or sold insurance or financial products in other countries, including Canada, Taiwan, the Philippines, Guam, Puerto Rico, and Jamaica." (*Id.* at ¶ 22.)  If Anderson's statements are true, then the facts

---

[4] During the AAA arbitration, Anderson testified that his duties were "[t]o maintain the IT systems and see that they're maintained, see that they're created for World Marketing Alliance." (Decl. of Pet'r ¶ 36.)

show that petitioner nevertheless received the override commissions from foreign downline agents even though he neglected to enter into the required contracts.

In light of all the facts set forth above, even accepting Anderson's affidavit, the court finds that petitioner has set forth a sufficient foreign connection to establish jurisdiction under the Convention.   The Convention applies where "there is a reasonable relation between the parties' commercial relationship and some important foreign element." *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 339-40 (5th Cir. 2004).   Petitioner has shown that the Agreement envisaged performance abroad.  *See Lander Co., Inc. v. MMP Investments, Inc.*, 107 F.3d 476, 478-82 (7th Cir. 1997) (holding that the Convention applied where performance of contract was in Poland); *Matabang v. Carnival Corp.*, 630 F. Supp. 2d 1361, 1363 (S.D. Fla. 2009) (holding that the Convention did not apply to the employment contract that did not involve performance abroad).

As respondents correctly assert, a challenge to the court's subject matter jurisdiction may be raised at any time, including after a judgment has been issued. *Henderson v. Shinseki*, 131 S. Ct. 1197, 1202 (2011).  This court must "deny jurisdiction . . . in all cases where such jurisdiction does not affirmatively appear in the record." *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxite de Guinee*, 456 U. S. 694, 702 (1982) (citation omitted).  In this case, however, the verified

10

petition on its face asserted jurisdiction.  (Pet. ¶ 16.)  In response to respondents' Rule 60 Motion, as set forth above, petitioner has further established jurisdiction under the Convention by proffering more detailed facts.

Even if jurisdiction under the Convention was doubtful or erroneous, the voiding of this court's judgment is not warranted.  In *United Student Aid Funds, Inc. v. Espinosa,* 130 S. Ct. 1367, 1377-78 (2010), the Supreme Court held:

> [A] void judgment is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final.  The list of such infirmities is exceedingly short; otherwise, Rule 60(b)(4)'s exception to finality would swallow the rule.  "A judgement is not void," for example, "simply because it is or may have been erroneous." Similarly, a motion under Rule 60(b)(4) is not a substitute for a timely appeal.  Instead, Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard. . . . Federal courts considering Rule 60(b)(4) motions that assert a judgment is void because of a jurisdiction defect generally have reserved relief only for the exceptional case in which the court that rendered judgment lacked even an "arguable basis" for jurisdiction.  *see, e.g., Boch Oldsmobile, supra*, at 661-662 ("[T]otal want of jurisdiction must be distinguished from an error in the exercise of jurisdiction, and . . . only rare instances of a clear usurpation of power will render a judgment void" (brackets and internal quotation marks omitted)).

*Id.* (citations omitted).

Since federal courts have  "power to interpret the language of the jurisdictional instrument and its application to an issue by the court," error in interpreting a statutory grant of jurisdiction is not equivalent to acting with total want of jurisdiction.  *Stoll*

11

*v. Gottlieb*, 305 U.S. 165, 172 (1938).  "[A] mere error in the exercise of jurisdiction does not support relief under Rule 60(b)(4)."  *Oakes v. Horizon Fin., S. A.*, 259 F.3d 1315, 1319 (11th Cir. 2001).  *See also Gulf coast Building & Supply Co. v. International Brotherhood of Electrical Workers*, 460 F.2d 105, 108 (5th Cir. 1972) (holding that error in law is insufficient to render judgment void under Rule 60(b)(4)). Because petitioner has presented, at the very least, an "arguable basis" for jurisdiction, this is not one of those "rare instances of a clear usurpation of power."  Therefore, the court will not void its order and judgment confirming the Award, and respondents' Rule 60 Motion is hereby DENIED.

### B.   Motion to Amend.

Although leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), the court "need not allow an amendment  (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) (quotation and citation omitted).  *See also Foman v. Davis*, 371 U. S. 178, 182 (1962) (holding that grant or denial of opportunity to amend is within discretion of the district court.).  Petitioner asserts that respondents have acted in bad faith, have caused unnecessary delays, and

have a dilatory motive.  Petitioner also asserts that any amendment would be futile and that allowing amendments will continue to prejudice petitioner.

In their motion, respondents seek permission to file amendments to their reply brief in support of their Rule 60 (b) Motion.  Respondents seek to submit an affidavit of Michael Anderson to support their argument that this court does not have jurisdiction because "[p]etitioner's claims to any foreign connection through Canada or the Philippines are not supported by the facts."  In addressing the Rule 60(b) Motion, in the interest of fully considering the merits of the case, the court considered this affidavit as if its submission had been allowed.

The court notes, however, that Anderson's affidavit is deficient in several respects.  In the affidavit, Anderson states that he had "personal knowledge . . . [that] Associates had to enter into agreements with WMA of Canada, Inc. or WMA Philippines, Inc. in order to sell insurance products or to receive override commissions in those countries."  (Aff. of Anderson ¶¶ 4-5.)  Anderson further states that "[t]here are no records that [petitioner] ever entered into any agreement with WMA of Canada, or with WMA Philippines."  (*Id.* at ¶ 6.)  The affidavit does not indicate how Anderson, a computer programmer, has the competence or "personal knowledge" to testify as to the contracts.  In the Eleventh Circuit, statements based on speculation or personal beliefs are generally improper. *Pace v. Capobianco*, 283 F.3d 1275, 1278-79

(11th Cir. 2002).  Similarly, though Anderson avers that "there are no records" of certain agreements, he has not provided any foundation that shows:  (1) the person with custody of the records he purported to review in making this conclusion; (2) the nature of his association with the custodian (whether as employee, agent, consultant, or expert); (3) what he or respondents did to locate any relevant documents; or (4) whether he has any knowledge or information as to the events or transactions which purport to appear in the documents that he would have reviewed.  Conclusory allegations lacking any foundation for establishing personal knowledge have no probative value.  *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000).

In addition, according to petitioner's declaration, as set forth above, respondent Humphrey has personal knowledge of petitioner's foreign connections.  For example, Humphrey knows that petitioner is a native of Vietnam, traveled with petitioner to various countries to recruit new foreign agents and to sell insurance and other financial products in foreign countries, and represented in brochures that WMA had expanded to and was conducting business throughout the world.  Respondents have not denied this.  In light of this knowledge, respondents' argument that petitioner lacks any foreign connection appears to be disingenuous.

Furthermore, as petitioner points out, Anderson's affidavit and the arguments it purports to support should have been made in response to the petition, which was

filed on February 12, 2010. At the very least, the affidavit and arguments should have been submitted with respondents' Rule 60 Motion of June 30, 2011. Respondents also failed to present any affidavit evidence when they filed their reply brief in support of their Rule 60 Motion. In their motion to amend, respondents do not explain the delay, but merely request leave for an amendment "to clarify the factual and legal issues."

Respondents' repeated delays and failure to produce evidence[5] indicate a dilatory motive. This is especially so because petitioner has already established claims and damages through extensive arbitration proceedings and is only seeking to confirm his right to the compulsory processes of this court to collect and enforce the Award. Any additional pleadings would necessarily delay the collection process and unfairly prejudice petitioner's right to collect the Award. This court has authority to impose sanctions on respondents and their counsel for various reasons, including but not limited to, unnecessary delay, vexatious multiplication of proceedings and bad faith conduct. *See* Fed. R. Civ. P. 11(c)(4); 28 U.S.C. § 1927; *Chambers v. NASCO,*

---

[5]   In addition to WMA's failure to participate in post-judgment discovery in this case, respondents appear to have a history of delay. After the underlying arbitration process, the arbitrator concluded that: (1) "Respondents' resistance to producing . . . financial information was extreme and unjustified and raises an inference of intent to conceal information from creditors;" and (2) "Respondents deserve sanctions for their delays in producing documents and information and for repeated misrepresentations relating to the creation, existence, availability, or destruction of documents and information." (Pet. to Confirm Arbitration Award Ex. A at 9, 13.)

*Inc.*, 501 U.S. 32, 43 (1991).  Respondents and their counsel are hereby ordered to appear and show cause why they should not be sanctioned.[6]

For the reasons set forth above, the court hereby DENIES respondents' motion to amend.

### C.     Motion to Compel.

Petitioner alleges that even though WMA sold a substantial amount of its assets for close to $200 million, carried an accounts receivable due from Humphrey and other insiders for $28 million, and issued dividends to its shareholders or control persons in amounts exceeding $100 million, it has refused to pay petitioner the Award or the judgments issued in relation thereto.[7]  Petitioner further alleges that, in response to his repeated demands for payment of the Award, WMA and its attorneys have claimed that WMA has no money to pay the Award.

To collect his judgments, on March 2, 2011, petitioner served his post-judgment discovery requests on WMA.  WMA did not provide any responses.  Having received no communication regarding the discovery requests, petitioner's counsel sent a letter

---

[6]  In response to the Rule 60 Motion, petitioner requests that respondents and their counsel be sanctioned.

[7]  In her award, the arbitrator concluded that petitioner's fraudulent conveyance claim "could be brought as part of post-judgment discovery should Respondents fail to pay the amount provided in this award."  (Pet. to Confirm Arbitration Award Ex. A at 9.)  In this regard, the arbitrator found that "from June 2001 to December 2002 (the period when Claimant was pursuing his claims for wrongful termination against the Broker Dealer, WMA and Humphrey), Humphrey may have caused the insolvency of WMA by distributions to himself or his other corporate entities."  (*Id.* at 5.)

dated April 18, 2011, to McLean making a good faith attempt to obtain WMA's compliance with its discovery obligations. By letter dated April 21, 2011, McLean responded, claiming that he did not represent WMA.

On April 22, 2011, petitioner served the discovery requests on Tenney, WMA's registered agent. WMA did not respond. Having received no communication regarding the April discovery requests, petitioner's counsel sent a letter dated May 26, 2011, to Tenney making a good faith attempt to obtain WMA's compliance with its discovery obligations. In an email sent June 1, 2011, Tenney denied that he represented WMA[8] and claimed that he was "not able to respond on behalf of this company."

On June 16, 2011, petitioner filed this motion to compel post-judgment discovery responses. On June 30, 2011, rather than responding to the merits of petitioner's motion to compel, respondents filed their Rule 60 Motion pursuant to Federal Rule of Civil Procedure 60(b)(4), claiming that this court's order and judgments confirming the Award and denying respondents' motion for modification were void for lack of jurisdiction. In its response to petitioner's motion to compel, WMA argues that because this court does not have jurisdiction to confirm the Award

---

[8] Petitioner points out that the Georgia Secretary of State website on February 18, 2011, (as last refreshed on June 16, 2011) showed that WMA is and remains an active Georgia corporation in good standing, that it has not been dissolved, and that its registered agent is James F. Tenney. (Pet'r's Mot. to Compel Ex. 1.)

for the reasons set forth in the Rule 60 Motion, it also does not have jurisdiction to enforce any post-judgment discovery predicated upon the confirmation of the Award.

As petitioner correctly points out, the filing of a motion under Federal Rule of Civil Procedure 60(b) "does not affect the judgment's finality or suspend its operation." FED. R. CIV. P. 60(c)(2). The mere filing of a motion under Rule 60 does not automatically stay the enforcement of the judgment. In order to obtain relief from a judgment, a party moving pursuant to Rule 60(b) must move for a stay which will only be granted "[o]n appropriate terms for the opposing party's security." FED. R. CIV. P. 62(b)(4). Notably, respondents have not moved for a stay or offered any security. Consequently, WMA's arguments against petitioner's motion to compel are without merit.

Furthermore, WMA's alternative request for an extension of time of 30 days from the date of disposition of the Rule 60 Motion to provide a substantive response to the motion to compel discovery is not supported by good cause. WMA has provided no basis for seeking an extension of time. WMA, having failed to participate in discovery, has not even attempted to set forth any reasons for its failure. The court finds that WMA's actions border on willfulness.

As a judgment creditor, petitioner is entitled to discovery under either the Federal Rules of Civil Procedure or applicable Georgia law. FED. R. CIV. P. 69(a).

In that regard, petitioner is entitled to discovery regarding the existence, identity, and location of any assets that WMA might have. *National Service Industries, Inc. v. Vafla Corp.*, 694 F.2d 246 (11th Cir. 1982). Both Federal and Georgia law permit discovery of any non-privileged matter "relevant to the subject matter involved" in the action. FED. R. CIV. P. 26(b)(1); O.C.G.A. §9-11-26(b)(1). Petitioner submits that his post-judgment discovery requests are relevant and otherwise proper.

Therefore, petitioner's motion to compel is hereby GRANTED. More specifically, the court hereby orders WMA to file full and complete responses, without objections, to petitioner's March and April discovery requests, and provide all documents requested in such discovery requests no later than January 3, 2012. Furthermore, the court hereby grants petitioner the reasonable costs and expenses including, but not limited to, attorney's fees incurred in bringing this motion.

### D.    Motion for Garnishment.

Pursuant to Federal Rule of Civil Procedure 69(a) and O.C.G.A. § 18-4-60, petitioner moves for the issuance of a writ of garnishment.[9] In support, petitioner has

---

[9] Federal Rule of Civil Procedure 69(a)(1) provides:

A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution - - and in proceedings supplementary to and in aid of judgment or execution - - must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

FED. R. CIV. P. 69(a)(1).

submitted an affidavit showing that WMA is indebted to plaintiff for (1) $1,176,394.00 plus post-judgment interest pursuant to the confirmation order and judgment of November 5, 2010, and (2) $14,387.50 plus post-judgment interest pursuant to the attorney's fee order and judgment of December 30, 2010.[10] For good cause shown, petitioner's motion is hereby GRANTED. The court hereby directs the clerk of the court to issue the summons of regular garnishment, which is attached to petitioner's motion as Exhibit 2.

## III.    Conclusion

For the foregoing reasons, the court hereby **DENIES** respondents' motion for relief from order [25]**, DENIES** respondents' motion for leave to amend brief in reply to petitioner's response in opposition to motion for relief from order [30]**, GRANTS** petitioner's motion to compel against respondent WMA [23], and **GRANTS** petitioner's motion for writ of garnishment [29].

The clerk of the court is hereby **DIRECTED to ISSUE** the summons of regular garnishment, which is attached to petitioner's motion as Exhibit 2. In addition,

---

[10] Based on the confirmation order and judgment of November 5, 2010, a writ of execution was issued on December 15, 2010. In addition, based on the attorney's fee order and judgment of December 30, 2010, a writ of execution was issued on March 31, 2011.

respondents and their counsel are hereby **ORDERED** to **APPEAR on January 18, 2012, at 10:30 a.m.** and **SHOW CAUSE** why they should not be sanctioned with regard to the matters discussed herein.

      **IT IS SO ORDERED**, this 16th day of December, 2011.


                   s/*William C. O'Kelley*
                   WILLIAM C. O'KELLEY
                   Senior United States District Judge